FILED
 2006 Sep-15  PM 01:20
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **VIVIAN Y. DRAKE,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**BIRMINGHAM BOARD OF** )<br>**EDUCATION, and DR.** )<br>**WAYMAN SHIVER, in his** )<br>**official capacity as** )<br>**Superintendent of the** )<br>**Birmingham Board of Education.** )<br>)<br>Defendants. | Civil Action Number<br>**2:04-cv-03169-UWC** |

### MEMORANDUM OPINION  DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment, as supplemented.  (Docs. 14, 31.)

Based on the facts presently before the Court, the motion must be denied.

### The  Facts[1]

1.  Vivian Drake, a female over the age of forty, brought this action against the Birmingham Board of Education ("BBE") alleging discrimination on the basis of her

---

[1] Most of these facts are, in fact, beyond dispute.  To the extent that the facts are disputed, they are construed in the light most favorable to the party opposed to the motion for summary judgment, the Plaintiff.



age, in violation of the Age Discrimination in Employment Act ("ADEA"), and her gender, in violation of Title VII of the Civil Rights Act of 1964 and Section 1983.

2. Plaintiff earned a bachelor's degree in secondary education from Athens State College in 1993; a master's degree from Alabama A&M University in the field of education in Trade/Industrial in 1995; and an AA certificate in Technical Education.

3. Plaintiff's educational background and experience have exposed her to the trades of plumbing, heating, electrical, and air conditioning. She is qualified to teach vocational classes and to coordinate vocational education.

4. The BBE employed Plaintiff for over a quarter century. Plaintiff began as a clerk-typist. She was thereafter promoted to the position of senior clerk in the Inventory, Shipping, and Receiving Department. In that position, she was responsible for school inventory, shipping and receiving of goods and supplies, vehicle re-fueling, and assisting with the supervision of employees.

5. In 1990, Plaintiff was promoted to the position of Head of Custodial Services. She remained in that position until 2003.

6. As Head of Custodial Services, Plaintiff was responsible for ordering chemicals, cleaning supplies, and other equipment for the Custodial Department and for schools in the system. She conducted training workshops for department personnel. She directly supervised a staff of nine employees, and she indirectly

supervised another 376 custodial employees. She made recommendations to the Superintendent regarding the transfers and promotions of employees in her department. She was responsible for handling emergencies in the schools and other buildings, which included fires, floods, and wind damage. She worked closely with contractors, other department heads, and school superintendents on school construction, renovations, and repairs.

7. Darryl Dunbar, a black male under the age of forty, earned an associate's degree in drafting after two years of courses at Lawson State Community College. A few years later, in 1993-94, he earned a certificate in heating and air conditioning from Bessemer Technical College. In 1997, Dunbar received his master plumbing and gas card. He does not hold any state or city certification in electricity or heating; and he is unaware of the requirement of such licenses for those who practice such trades in the City of Birmingham and the State of Alabama.

8. Before being hired by the BBE as a temporary supply custodian helper in 1990, Dunbar previously worked as a machine operator at Buffalo Rock Company.

9. In 1991, Dunbar was hired on a full-time basis by the BBE as a maintenance helper. He remained in this position until 1995, when he was promoted to the position of journeyman HVAC mechanic - a position for which he had not applied. In 1998, Dunbar was promoted to the position of construction inspector, where he assisted with school construction. His title was changed to project manager

in 1998, but his job duties remained the same. In these three positions, Dunbar never had the responsibility of supervising other employees.

10. In 1998, Dunbar's supervisor noted on Dunbar's evaluation that he needed additional education and training in construction management. The following year, Dunbar was rated "average," and his supervisor noted that his performance could be enhanced through formal training in construction technology.

11. On June 27, 2002, the BBE discharged Terry Rainey, its Senior Executive Director of Facilities, Maintenance, and Operations ("FM&O").

12. Although Superintendent Wayman Shiver initially indicated that Plaintiff and Dunbar would assume Rainey's duties and split them, Shiver subsequently recommended to the BBE that Dunbar be placed in the position of Acting Senior Executive Director of FM&O, with backpay retroactive to the date of Rainey's discharge. Between the time of Rainey's departure and Dr. Shiver's recommendation, Plaintiff and Dunbar had actually shared Rainey's duties. The position of Acting Director of FM&O was never posted before it was filled. The BBE approved Dr. Shiver's recommendation.

13. After the BBE approved Dr. Shiver's recommendation and promoted Dunbar to the acting position, Plaintiff filed a grievance concerning the promotion under established board policy. BBE officials ignored this grievance.

14. On January 17, 2003, Plaintiff filed a charge of discrimination against the

BBE with the Equal Employment Opportunity Commission ("EEOC"), complaining of gender and age discrimination. Defendants received notice of the charge on January 23, 2003.

15. On April 2, 2003, Plaintiff filed an amended charge of discrimination with the EEOC, alleging retaliation by the BBE based on its failure to process her grievance and to grant her a hearing on her complaints. Defendants received notice of this charge on April 24, 2003.

16. On May 27, 2003, on Dr. Shiver's recommendation, the BBE transferred Plaintiff from her position to the Child Nutrition Department. As Defendants were aware, Plaintiff was not qualified for this position, which required a bachelor's degree in home economics and three years of work experience in that area.

17. Prior to her transfer to the Child Nutrition Department, Plaintiff had requested of Dr. Shiver that she be considered for the position of Manager of Facilities, Inventory, Stores, and Distribution ("FISD"). She had substantial experience in these areas.

18. On July 1, 2003, without positing the position, Victor Pettus was promoted to the position of Acting FISD Manager. He received a $12,391 pay increase as a result of this promotion.

19. Victor Pettus is a black male under the age of forty. He has earned only a high school diploma. He was initially employed by the BBE in 1995.

20.   If plaintiff had been transferred to the position of Acting FISD Manager, it would have been a lateral move involving no increase in salary.

21.   In November 2003, the BBE posted the Senior Executive Director of Facilities and Maintenance ("F&M").  By that time, Dr. Shiver's agents lowered the qualification for the job. Previously, the position required a master's degree, with an emphasis in construction or a related field, or, at least a bachelor's degree.[2]

22.   To insure that Dunbar would receive the job, Dr. Shiver indicated a desire to lower the requirement to either a "Bachelor's degree . . . or three (3) years successful work experience in related field or equivalent combination of education and work experience."[3]  (Ex. K.)

23.   Dunbar was selected by Dr. Shiver and the BBE for the position of Director of F&M.  Dunbar was responsible for the maintenance and grounds of 67 schools and 13 administrative centers in the school system.  He was responsible for preparing and presenting to the BBE an annual budget, monitoring expenditures, and authorizing all capital account transactions.  He was paid an annual salary of $80,000 and given the use of an automobile.

24.   On Plaintiff's first and amended charge, the EEOC found reasonable cause

---

[2] Each of the two previous managers of this predecessor department had a bachelor's degree. Additionally, one had a master's degree and the other a law degree.

[3] Dr. Shiver had indicated to Personnel Director Samuetta Drew that he wanted the qualifications lowered for this position. (Ex. Q, Drew Depo., pp. 20, 21.)

to believe that:

> [Plaintiff] was denied a wage increase and denied a promotion because of her sex, female, and age, 50, in that [the BBE] selected a younger male with less qualifications and experience than the [Plaintiff] to fill the position of Senior Executive Director of Facilities, Maintenance, and Operations. The evidence also shows that the male employee received and increase in salary of more than $25,000 annually, and it was retroactive to the end of June 2002. Additionally, there was evidence that [the BBE] retaliated against the [Plaintiff] by denying her a grievance hearing.

(Plaintiff's Notice of Filing at 4, *Drake v. Birmingham Bd. of Educ.*, No. 2:06-cv-0071(N.D. Ala. filed Jan. 11, 2006)).

Based on these facts, if anyone is entitled to summary judgment, it is certainly neither the BBE or Dr. Shiver. If these facts are proven at trial, no reasonable jury could find in favor of either of them.

Therefore, the Motion for Summary Judgment will be denied by separate order.

Done the 15th day of September, 2006.

_____
U.W. Clemon
Chief United States District Judge