FILED

2007 Feb-08  AM 10:17
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **VIVIAN DRAKE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:04-cv-3169-UWC** |
| **BIRMINGHAM BOARD** | ) | |
| **OF EDUCATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED MEMORANDUM OPINION
## ON DEFENDANT'S MOTION TO RECUSE

After Final Judgment and a Permanent Injunction, (Doc. 66), were entered in this case, the Defendant Birmingham Board of Education ("the Board") moved for my disqualification as the judge.  (Def.'s Motion to Recuse, Doc. 68.) Alleging a "personal" and "extrajudicial" relationship between the Court, the Plaintiff and her husband, the Board argues that the alleged relationship creates an appearance of partiality, thus offending the requirement under 28 U.S.C. Section 455(a) that a judge disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Because the factual basis of the motion is totally lacking in evidentiary support, and because of its untimely filing, it will be denied.

## I. The Relevant Facts

This case was randomly assigned to me on November 8, 2004.[1]  When discovery was completed, the Board moved for summary judgment against the Plaintiff Vivian Drake (the "Plaintiff").  On September 15, 2006, I entered a Memorandum Opinion, denying the Board's motion for summary judgment.  In that opinion, construing the disputed evidence in a light most favorable to the Plaintiff as required by law, I concluded that  "if anyone is entitled to summary judgment, it is certainly neither the BBE [Birmingham Board of Education] or Dr. Shiver.  If these facts are proven at trial, no reasonable jury could find in favor of either of them."  (Memo. Op. Den. Def.'s Mot. for Summ. J., Doc. 36 at 7.)  The quotation was carried in the local media.[2]

The jury trial of this action was initially scheduled for November 28, 2006.  On motion of Plaintiff's counsel, the trial was continued to January 8, 2007.  To the best of my knowledge, I first met the Plaintiff when she appeared in court for

---

[1] Prior to that time, I presided over several cases in which the Board was a party.  In some of those cases, the Board prevailed; in other cases, it did not.

[2] Patrick Hickerson, *After bribery sentence, schools still face 3 suits Plaintiffs say hire was less qualified*, Birmingham News, Dec. 10, 2006, at 15A.

the trial of this case.  One of the spectators in the courtroom was identified to me as her husband, Richard Drake, whom I did not know.  **I did not know the Plaintiff or her husband, Richard Drake, when the trial of this case commenced; and aside from seeing them in court and hearing the Plaintiff's testimony, I did not know them when the trial ended.**

I have lived in Birmingham all of my life.  For the last twenty-seven years, I have been a judge on this court.  Prior to that time, I was a civil rights activist,[3] civil rights lawyer,[4] and one of the first two black state senators since Reconstruction.  My confirmation battle was one of the top ten Alabama news events of 1980.  In the last quarter century, I have presided over some of the more controversial federal cases in North Alabama.  Two Birmingham streets are named in my honor.  Thus, I am fairly well known in the Birmingham community. Unfortunately for me, I do not know everyone in the community who knows of

---

[3]*See generally* Glenn T. Eskew, <u>But For Birmingham: The Local and National Movements in the Civil Rights Struggle</u> 198 (1997); Patterson Toby Graham, A Right to Read: Segregation and Civil Rights in Alabama's Public Libraries, 1900-1965 87-88 (2002); Dianne McWhorter, <u>Carry Me Home Birmingham, Alabama: The Climactic Battle of the Civil Rights Revolution</u> 286-87 (2001); Don Yaeger, Turning of the Tide: How One Game Changed the South 28, 71 (2006).

[4]I specialized in school desegregation and employment discrimination.  Ironically, I was one of the two principal lawyers who represented the plaintiffs in the lawsuit which led to the promotion and selection of blacks to administrative positions in the Birmingham school system. *See generally Armstrong v. Bd. of Ed. of City of Birmingham,* No. 9678 (N.D.Ala.).

me.

The 125 year-old Sixth Avenue Baptist Church ("Sixth Avenue") of Birmingham is reputed to be the largest black congregation in the State of Alabama, with over 5,000 members. Two of its members have served as superintendents of the Board. Among its most prominent members are Dr. Danetta K. Thornton-Owens and her architect husband, Kenneth Owens, Jr. I have known both of them for many years, and I consider them to be friends.

Dr. Thornton-Owens is a present member of the Board. During part of the time embraced by this lawsuit, she was the president of the Board. Kenneth Owens is a longstanding Sixth Avenue deacon, having served as Chairman of the Board of Deacons. By virtue of her husband's position, Dr. Thornton-Owens has served as a Sixth Avenue deaconess for many years.

On November 16, 2006, I was ordained as a deacon of Sixth Avenue, with the support of Kenneth Owens. At the time of my ordination, through the trial of this case, and at the time of entry of judgment in this case, I was not aware that Richard Drake is a Sixth Avenue deacon or that the Plaintiff is a deaconess.

In my two-month tenure as a deacon, Richard Drake has not been present at any of the Deacon Board meetings I attended, where between thirty to fifty deacons are usually in attendance. To the best of my knowledge, he was not

present on the several occasions during the last few years when the deacons met with the prospective deacons in workshops and seminars.

During one of the training sessions for prospective deacons, I was informed that there are more than 100 deacons at Sixth Avenue.  However, the first time I saw a list of deacons was Friday, January 26, 2007, after a list was filed by the Board in support of its recusal motion.  The list reflects that there are nearly 150 deacons at Sixth Avenue.  I am personally acquainted with roughly sixty-five of the deacons listed; nevertheless, I knew most of them before I became a member of Sixth Avenue.  In fact, I did not know that several of the persons listed were Sixth Avenue deacons until I saw the list a few days ago.

The Board's counsel has been aware of the Plaintiff's membership at Sixth Avenue, and of her status as a deaconess, at least since November 15, 2005, when her deposition was taken.  (Def.'s Evidentiary Submission in Supp. of Mot. for Summ. J., Doc. 15, Ex. 1, Vivian Drake Dep. at 43.)  Of course, Board member and one-time Board President Dr. Thornton-Owens has known of the Plaintiff and her husband's status as Sixth Avenue deaconess and deacon for many years.

## II. The Applicable Law

Title 28 U.S.C. Section 455(a) requires a federal judge to disqualify himself in any proceeding in which his impartiality might reasonably be questioned.  The relevant inquiry "is not the reality of bias or prejudice but its appearance." *Liteky v. United States,* 510 U.S. 540, 548 (1994).  The standard is "whether an objective, fully informed lay observer would entertain significant doubt about the judge's impartiality." *Thomas v. Tenneco Packaging Co., Inc.,* 293 F.3d 1306, 1329 (11th Cir. 2002) (citing *Christo v. Padgett,* 223 F.3d 1324, 1333 (11th Cir. 2000)).  In other words, the relevant inquiry is "how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan,* 49 F.3d 152, 156 (5th Cir. 1995).

Under Section 455(a), actual partiality or knowledge of the disqualifying circumstances on the part of the judge is not required.  *United States v. Kelly,* 888 F.2d 732, 744 (11th Cir. 1989).  "The duty of recusal applies equally before, during, and after a judicial proceeding, whenever disqualifying circumstances become known to the judge." *Id*.  The general rule is that "a federal judge should reach his own determination [on recusal], without calling upon counsel to express their views." *Kelly,* 888 F.2d at 745 (emphasis and citations omitted).

However, Section 455(a) does **not** require the judge to accept as true all allegations in determining whether a reasonable person would harbor doubts concerning his impartiality. *United States v. Greenough,* 782 F.2d 1556, 1558 (11th Cir. 1986). For "[i]f a party could force recusal of a judge by factual allegations [alone], the result would be a virtual 'open season' for recusal." *Id.* A charge of the appearance of partiality must be supported by the facts. *Id.*

To require recusal under Section 455(a) or 455(b)(1), the bias or prejudice of a judge must stem from an "extrajudicial source." *Liteky,* 510 U.S. at 555. The alleged bias or prejudice must be personal: it must derive "from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Jaffe v. Grant,* 793 F.2d 1182, 1189 (11th Cir. 1986). Doubts concerning the propriety of disqualification should be resolved in favor of disqualification.

Under Canon 5 of the Code of Conduct for United States Judges, a judge may serve as an officer, director, trustee, or non-legal advisor of a religious organization not conducted for the economic or political advantage of its members, with certain limitations not applicable to this case. CODE OF CONDUCT FOR UNITED STATES JUDGES Canon 5 (2005). Thus, there is no impropriety in a judge's service as a deacon of a church, so long as the judge does not engage in solicitation for the

church or permit his name or office to be used in such solicitation, and provided

that the service will not interfere with the prompt and proper performance of the

judge's judicial duties.   CODE OF CONDUCT FOR UNITED STATES JUDGES

Compendium § 5.3-5.  As Chief Judge Bauer of the Seventh Circuit has observed:

> In taking the oath of office as a judge, a person does not agree to be a hermit
> removed from the world. Traditionally, societies choose persons who are
> leaders of society to be judges. It would make no sense to prohibit them from
> using leadership and other abilities in helping our society so long as it does
> not create a conflict of interest or violate other provisions of the Code of
> Conduct. That a judge knows someone does not require recusal. An active
> lawyer who takes the bench will always know a good many of the lawyers
> that appear in court and is also likely to know some persons who are parties
> or who work for corporations or agencies who are parties. The judge must
> look to the strength of the relationship to decide recusal. . . . [A] judge who
> does not know the difference between his or her friends and the job of being
> a judge does not deserve to be a judge or to have friends.

*In Re Complaint Against District Judge Sarah Evans Barker*, No. 93-7-372-5,

Judicial Council of the Seventh Circuit at 2 (cited in *Sexson v. Servaas,* 830 F.

Supp. 475, 478 (S.D. Ind. 1993)).

A motion to disqualify a judge under Section 455(a) must be timely filed.

*United States v. Slay,* 714 F.2d 1093, 1094 (11th Cir. 1983);  *McWhorter v. City of*

*Birmingham,* 906 F.2d 674, 678 n.4. (11th Cir. 1990).  "[A] recusal issue may not

be abused as an element of trial strategy."  *Kelly*, 888 F.2d at 746.  A party may

not lie in wait, knowing of facts requiring disqualification under Section 455(a),

and raise the issue only after the Court's ruling on the merits.  *Phillips v. Amoco Oil Co.,* 799 F.2d 1464, 1472 (11th Cir. 1986).

In the case cited by the Board, *Summers v. Singletary,* 119 F.3d 917 (11th Cir. 1997), which deals with the timeliness requirement in the Section 455(b) context, the Court explained:

> We hold that a motion to disqualify filed under § 455(b) must be filed within a reasonable time after the grounds for the motion are ascertained. Certainly, where the facts are known before a legal proceeding is held, waiting to file such a motion until the court has ruled against a party is untimely. Both Summers and his counsel were present when the circumstances underlying petitioner's motion arose. They did not raise the issue until after an adverse decision on the magistrate judge's report and recommendation had been entered. This was too late.

917 F.3d at 921. The same principle applies to Section 455(a) disqualification motions.  *See Phillips*, 799 F.2d at 1472.

### III. Analysis

#### A. Appearance of Partiality

This is not a close call; there is no factual or legal basis for the Board's recusal motion.  The uncontroverted fact is that I did not know the Drakes before this case ended.  I had no personal or extrajudicial relationship with either of them. To be characterized as a "personal" relationship, the deacon/deaconess relationship shared by me, the Plaintiff, and Richard Drake must have been

"carried on between individuals directly."  Merriam -Webster's Collegiate Dictionary 867 (10th ed. 1996).  Since I did not know the Plaintiff prior to the trial of this case, by definition, there could not have been a personal relationship between us.  The fact that I was elected to the same Deacon Board as Richard Drake does not alter this controlling fact.[5]  There is simply no disqualifying fact to trigger recusal under Section 455(a).

Attorney Thomas, counsel for the Board, alleges that an otherwise unidentified "concerned citizen" telephoned him and raised impartiality questions after the local newspaper reported the Court's decision.  The questions allegedly arose from the indubitable facts that: 1) the Plaintiff is a Sixth Avenue deaconess; 2) her husband is a Sixth Avenue deacon; and 3) seven weeks before the trial, I was publicly ordained as a Sixth Avenue deacon.  In the Board's view, these facts standing alone are sufficient to generate significant doubt about my impartiality in the mind of an objective, fully informed lay person.

The sad fact, however, is that the unidentified "concerned citizen" was not

---

[5]Moreover, where I did in fact have a personal relationship with a non-party to a case, like Richard Drake is this action, the Eleventh Circuit held that I was not required to recuse myself from the case.  *See McWhorter,* 906 F.2d at 679 (holding that I was not required to recuse myself because of my friendship and business relationship with Mayor Richard Arrington: "[t]he Mayor was neither a party nor a witness in this case."); s*ee also, Baker v. City of Detroit,* 458 F. Supp. 374, 376 (D.C. Mich. 1978) (holding that although the judge did have a personal friendship with the mayor of Detroit, where the relationship was not supported by facts which would raise a reasonable inference of a lack of impartiality in the context of the issues presented, the recusal motion was due to be denied).

fully informed of the facts and did not act as the reasonable person would.  The reasonable person would need more information before making the giant leap to apparent partiality.  Initially, the reasonable person would want to know whether the judge personally knows the Plaintiff and her husband.  The reasonable person would also want to know whether the judge and Richard Drake have jointly attended deacons' meetings and interacted at such meetings.  It would likely make a difference to the reasonable person if there were only a dozen church deacons who work together intimately, rather than thirteen dozen deacons lacking personal knowledge of and having never interacted with each of their fellow deacons.

If the reasonable person knew that on the other side of the equation, the husband of a member of the Board was also a deacon, and the Board member was herself a deaconess at the same church, that consideration would likely militate against doubts concerning partiality in favor of the Plaintiff because of her deaconess status.  Further, such doubts would evaporate if the reasonable person knew that the judge was a friend of the Board member and her husband, but did not even know the Plaintiff or her husband or that they were members of his church - much less that the Plaintiff was a deaconess and her husband was a deacon.

In sum, if the reasonable person were fully informed of the relevant facts as

shown in the preceding section of this opinion, that person would have no basis for harboring doubts concerning my impartiality in this case.

## B. Timeliness of Recusal Motion

This is the classic case in which counsel has sought to use the disqualification issue as part of a trial strategy.  Since November 2005, counsel for the Board has known that the Plaintiff was a deaconess at Sixth Avenue.  Inferentially, the Board's counsel would also have known that her husband is a deacon at Sixth Avenue.  In fact, counsel could have easily obtained this information from Board member Dr. Thornton-Owens.  Communication with deaconess Dr. Thornton-Owens would also have alerted the Board's counsel to the fact that I was a prospective deacon at Sixth Avenue, and that in November 2006, I was ordained as a deacon of the church.

With constructive knowledge of and turning a blind eye to these facts, notwithstanding the fact that I raised serious doubt concerning the strength of the Board's defenses in a written opinion two months before I became a Sixth Avenue deacon, the Board's counsel elected to defer[6] raising the disqualification issue in the vain and remote hope that a jury would somehow rule in favor of the Board and against the Plaintiff.  Counsel's trial strategy was misguided; counsel gambled

---

[6]This "election" probably was also heavily influenced by the consideration that the issue lacked merit.

and lost.

Under these circumstances, to the extent that there is a disqualifying circumstance - and there is none - the Board, through its counsel, waived its right to raise the disqualification issue.

By separate order, the Board's Motion to Recuse will be denied.  The lawyers who signed the motion are hereby reminded of their duties under Federal Rule of Civil Procedure 11.[7]

Done the 8th day of February, 2007.

_____
U.W. Clemon
United States District Judge

---

[7]        **Representations to the Court.**   By presenting to the court . . . a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,  —

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
                              . . .
(3) the allegations and other factual contentions have evidentiary support . . . .

Fed. R. Civ. P. 11(b).